UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY ELLISON, and THE ESTATE OF
ABRAM ELLISON, through Judy Ellison,
personal representative

       Plaintiffs,

v.

WELLS FARGO HOME MORTGAGE,
INC.,

       Defendant.

_____/

Case No. 09-cv-14175

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT (docket no. 11)

This case involves a residential land dispute whereby Plaintiff Judy Ellison[1] ("Judy")

seeks to quiet title to her principal residence. Since the filing of the complaint, the lender-

defendant, Wells Fargo Home Mortgage, Inc. ("Wells Fargo"), foreclosed on the property,

bought it at auction, and quit-claimed its interest to Fannie Mae. Wells Fargo seeks

summary judgment on Judy's claim of quiet title. For the reasons below, the Court will

grant Wells Fargo's motion and enter judgment in its favor.

## FACTS

The following facts are undisputed unless otherwise indicated, or are taken in the light

most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986) (on summary judgment, "the evidence of the non-movant is to be believed,

and all justifiable inferences are to be drawn in his favor.").

---

[1] Although there are two named plaintiffs (Judy Ellison and Estate of Abram Ellison), the
estate plaintiff is a nominal plaintiff.

Abram and Judy Ellison were married and owned the residential property that is the subject of this action. They originally took title, as husband and wife, pursuant to a warranty deed executed in 1991. Compl. ¶ 4.

In 2003, Abram contacted defendant Wells Fargo about a reverse mortgage on his home.[2] Judy, as co-owner of the property, did not qualify for the loan because she was not old enough. Ellison aff. ¶ 7.[3] Apparently to remedy this roadblock to obtaining the loan, on November 13, 2003, the day before Abram signed the closing documents, Judy quit-claimed her entire interest in the property to Abram. Def. mot. ex. C; Ellison dep. 22.[4] Execution of the quit-claim deed assigned to Abram the entirety of Judy's ownership interest in the property.

The following day, November 14, 2003, Abram closed on the reverse mortgage and executed the note, mortgage, and all relevant ancillary documents. *See* Def. mot. ex. B. Abram's is the only name and signature on all of the closing documents, except for the actual mortgage itself, which lists, in pen, Judy's as a "borrower," and includes her signature. Def. mot. ex. F.

The day after closing on the mortgage, Abram quit-claimed his interest in the property back to himself *and* Judy, as husband and wife, thereby attempting to transfer some ownership interest in the property back to Judy. Def. mot. ex. G; Ellison dep. 25.

---

[2] A reverse mortgage loan is a loan typically available to persons older than 62 years of age, and is used to release the equity in the mortgaged property as one lump sum or in multiple payments. The lending party secures the loan with a mortgage on the home. Default on the note is usually triggered by, among other things, the death of the borrower.

[3] Judy's "affidavit" is not signed or notarized. The Court's cites the affidavit only to establish background, non-material, facts not contested by Wells Fargo.

[4] No party submitted the entire transcript of Judy's deposition. The various pages of her deposition, which the Court cites herein, are attached to Wells Fargo's opening and reply briefs, and Judy's response brief.

Judy contends that around the time Abram was ready to close on the reverse mortgage, a Wells Fargo representative told the couple that Judy's interest in the property would be protected by the quit-claim deed Abram would execute the next day. Compl. ¶ 8.

Abram died on September 24, 2008. Compl. ¶ 11. In accordance with the terms of the note, *see* Def. mot. ex. E (¶ 7(A)(i)), Wells Fargo accelerated the due date of all outstanding principal and interest and demanded repayment. Ellison aff. ¶ 12.

## PROCEDURAL HISTORY

Judy herself and Abram's estate, as co-plaintiffs, filed this action in state court seeking a judgment declaring that Judy holds "full legal and equitable title to the Property in fee simple absolute, free and clear of any and all claims of defendant in this action, and quieting title to the property forever in Plaintiff Judy Ellison." Compl. at 5-6. Wells Fargo timely removed on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a)(1).

While this action was pending, Wells Fargo instituted foreclosure proceedings. On February 17, 2010, pursuant to a foreclosure sale, a Sheriff's Deed was executed in Wells Fargo's favor. Def. mot. ex. J. Wells Fargo bought the property at auction and quit-claimed its interest to Fannie Mae. Def. mot. ex. K.

## DISCUSSION

I. <u>Legal Standards</u>

A. <u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The court must

construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citation omitted).

In opposing a motion for summary judgment, the nonmoving party must do more than raise some doubt as to the existence of a fact; it must produce evidence that would be sufficient to require submission of the issue to a jury. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

B. The *Erie* Doctrine

"Under the long-standing *Erie* doctrine, in actions brought in federal court invoking diversity jurisdiction, a court must apply the same substantive law as would have been applied if the action had been brought in a state court of the jurisdiction where the federal court is located." *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007). Since Judy asserts only a state cause of action, the Court applies Michigan substantive law.

II. Analysis

Wells Fargo seeks summary judgment on Judy's quiet title claim. Michigan law provides that "any person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action . . . against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff . . . ." Mich. Comp. Laws § 600.2932(1). Wells Fargo's motion is based on two grounds: 1) to the extent Judy has any interest in the property, it is subordinate to the interest of Wells Fargo;

2) because there was no fraud, accident, or mistake in the foreclosure proceedings, Judy

cannot set aside the foreclosure sale.

    A.  <u>Wells Fargo has a Superior Interest in the Property</u>

Wells Fargo argues that Judy's interest in the subject property is subordinate to its

own. Abram was the sole owner of the mortgaged property when he executed the reverse

mortgage loan. Any ownership interest Abram subsequently conveyed to Judy through the

quit-claim deed was subject to the encumbrance placed on the property by the mortgage

given to Wells Fargo. Therefore, Wells Fargo contends, Judy's interest in the property is

junior to Wells Fargo's, and Judy is simply mistaken that the second quit claim deed

somehow gave her an interest in the property superior to that of Wells Fargo.

Wells Fargo is correct. Abram could only convey to Judy whatever interest he himself

had in the property, which in this case, because of the mortgage he had given Wells Fargo

just prior to executing the quit-claim deed to himself and Judy, was an interest in already

encumbered property. Any interest Abram conveyed to Judy through the quit-claim deed

was also subject to the reverse mortgage. He could not convey to her an interest greater

than what he had at the time. *See Roddy v. Roddy*, 342 Mich. 66, 69 (1955) ("It is settled

law in this State that a quitclaim deed transfers any interests the grantor may have in the

lands, whatever its nature."); *Brownell Realty, Inc. v. Kelly*, 103 Mich. App. 690, 695 (1981)

("It is clear beyond dispute that the grantee from a party conveying by quitclaim deed

acquires the right and title which his grantor had *and no other*." (citing *Roddy*, 342 Mich.

66) (emphasis added)); *cf. Mich. Fire Repair Contractors' Ass'n v. Pac. Nat'l Fire. Ins. Co.*,

362 Mich. 552, 558-59 (1961) ("[An] assignment [of rights under a contract] clearly cannot

convey to plaintiff contracting company any right which the [conveying party] did not

possess."). Conveying an interest in the property through the quit-claim deed did not

5

remove Wells Fargo's interest in the property. The reverse mortgage still encumbered the property when Abram conveyed ownership interests to Judy. And since Wells Fargo's interest was created prior to Abram's quit-claim to Judy, Wells Fargo's interest has higher priority.

Wells Fargo also argues that even though Judy's name appears on the reverse mortgage document as a "borrower," she is really not a "borrower," and for that reasons not entitled to borrower rights. Specifically, Wells Fargo contends, Judy is not a borrower because she had no interest in the property that she could mortgage to Wells Fargo. The inclusion of her name in the mortgage, therefore, was superfluous.

Judy argues in response that, contrary to Wells Fargo's assertions, Judy did in fact have an interest in the property in the form of her dower rights that were never extinguished by the quit-claim to Abram. Therefore, Judy claims, she *did* have an interest she could mortgage to Wells Fargo, and should properly be considered a borrower. With Judy as a borrower using the house as her principal residence, Wells Fargo had no authority under the mortgage to accelerate payment of the principal and hold her in default. *See* Mortgage ¶ 9(a) (provision allowing for acceleration of debt and immediate payment of all sums if "a Borrower dies *and the Property is not the principal residence of at least one surviving Borrower*." (emphasis added)).

In reply, Wells Fargo asserts that, even assuming Judy did have dower rights in the property at some point, she voluntarily released those rights when she quit-claimed her interest in the property to Abram. A married woman has the power to release her dower through a conveyance. Mich. Comp. Laws § 558.13; *see also M & D Robinson Co. v. Dunitz*, 12 Mich. App. 5, 13 (1968) ("The power of a married woman to release her dower by appropriate instrument is further found in [Mich. Comp. Laws § 558.13]. From early

6

times this enactment was held to give the wife power to contract for the release of her dower which would be enforced." (footnote omitted)).   Judy relinquished any dower rights in the property she may have had by quit-claiming to Abram her interest in the property.[5]

Wells Fargo is entitled to judgment as a matter of law.

### B.  Judy Cannot Unwind the Foreclosure Action

Wells Fargo's second basis for its motion is that that the Court lacks the authority to set aside the foreclosure sale since Judy has failed to establish the presence of fraud, accident, or mistake.  It cites *Freeman v. Wozniak*, 241 Mich. App. 633, 637-38 (2000).

In *Freeman*, the Michigan Court of Appeals reversed the trial court's judgment setting aside a foreclosure sale.  241 Mich. App. at 638.  In the proceedings below, the trial court had set aside the sale after finding that the mortgagor was legally incompetent at the time of the sale, and, therefore, never received actual notice of the foreclosure.  *Id.* at 636.  The mortgagor conceded that the proceedings complied with the statute.  *Id.* at 637.  The trial court determined that, as a matter of equity, it would be unfair to allow the sale to stand. *Id.* at 636.  The court of appeals reversed in a per curiam opinion, following the Michigan Supreme Court's holding in *Senters v. Ottawa Sav. Bank*. 443 Mich. 45 (1993) that equitable considerations cannot displace a statute – absent fraud, accident, or mistake – when the statute applies and dictates the requirements for relief by a party.  *Id.* at 638.  The

---

[5] Judy does not argue that her quit-claim deed to Abram was void for lack of consideration.  *See Dallavo v. Dallavo*, 189 Mich. 350, 359 (1915) ("We also agree with the conclusion of the trial judge that the deed signed by the present wife was without legal consideration so far as she was concerned, and that it was proper to preserve to her her dower rights.").  Even if Judy made this argument, however, it would lack merit.  Wells Fargo's loan to Abram, which was presumably used for "family purposes," is sufficient consideration to support Judy's release of her dower rights.  *See, e.g., Watkins v. Minor*, 214 Mich. 380, 389 (1921) (money paid to the husband to be deposited in the bank to be used for "family purposes" was sufficient consideration to support the wife's release of her dower rights in the conveyed premises); *Dunitz*, 12 Mich. App. at 15 (same, following *Watkins*).

7

court of appeals found that the foreclosure-by-advertisement statute applied, that its requirements were satisfied, and that the trial court erred in setting aside the foreclosure. *Id.*

Here, Wells Fargo asserts that the requirements of the foreclosure-by-advertisement statute were satisfied, there are no specific allegations of fraud, accident, or mistake, and that this Court therefore lacks the power to set aside the foreclosure sale. Judy responds with two arguments: fraud and lack of actual notice.

1. Fraud

Judy first asserts that there was fraud in the foreclosure sale. She relies on the representation made by the Wells Fargo employee that by adding Judy's name to the mortgage agreement Judy could remain in the home even after Abram died, and that her interest in the property would be protected by Abram's quit-claim deed issued to himself and Judy after Abram executed the reverse mortgage. This type of fraud, however, does not relate to the foreclosure proceedings themselves, and is not the type of fraud contemplated by *Senters* and *Freeman*. *See Whitfield v. OCWEN Berkeley Fed. Bank & Trust*, No. 221248, 2001 WL 1699782, at *2 (Mich. Ct. App. Dec. 28, 2001) ("[T]he type of fraud sufficient to set aside a foreclosure sale must generally relate to the foreclosure procedure or sale itself." (citing *Freeman*)); *see also Gordon Grossman Bldg. Co. v. Elliott*, 382 Mich. 596, 605 (1969) ("The authorities seem to justify the conclusion that, where the owner has been induced to refrain from redeeming by fraudulent conduct and representations, equity will interpose and grant relief." (quoting *Palmer v. Palmer*, 194 Mich. 79, 80-81 (1916)).

Even assuming an act of fraud independent of the foreclosure proceedings could justify setting aside the sale, Judy's assertion of fraud lacks merit for two additional

8

reasons. First, the fraud she alleges relates to a future promise – as opposed to a misrepresentation of an existing fact – which cannot support an action of fraud unless the promise was made in bad faith. *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336-38 (1976). There is no allegation of a bad faith promise made by the Wells Fargo representative.

Second, the applicable statute of frauds bars Judy's fraud claim. Michigan's statute of frauds provides:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2).

Judy has produced no writing signed by Wells Fargo stating that Wells Fargo promised Judy she could stay in her home after her husband died. Accordingly, her claim of an alleged oral accommodation is unenforceable under any of the above subsections. *See Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550 (2000) ("[Mich. Comp. Laws § 566.132(2)] plainly states that a party is precluded from bringing a claim – no matter its label – against a financial institution to enforce the terms of an oral promise to waive a loan provision."); *see also Republic Bank v. Britton Estates*, L.L.C., No. 258616, 2006 WL 445916, at * (Mich. Ct. App. Feb. 23, 2006) ("Even if promises were actionable,

the claims would be precluded by the statute of frauds, the applicability of which is not dependent on the label attached to appellants' cause of action." (citing *Crown Tech.*)).

2. <u>Statutory Notice</u>

Judy's second argument for vitiating the foreclosure sale is that the requirements of the foreclosure-by-advertisement statute were not met since she received no actual notice of the foreclosure sale.  Michigan's foreclosure-by-advertisement statute provides:

> Notice that the mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, shall be given by publishing the same for 4 successive weeks at least once in each week, in a newspaper published in the county where the premises included in the mortgage and intended to be sold, or some part of them, are situated . . . In every case within 15 days after the first publication of the notice, a true copy shall be posted in a conspicuous place upon any part of the premises described in the notice.

Mich. Comp. Laws § 600.3208.

Thus, a mortgagor is not entitled to actual notice of a foreclosure sale; constructive notice through publication and posting in a conspicuous place on the premises is sufficient. *Jennings v. Arnold*, 272 Mich. 599, 603 (1935); *Windisch v. Mortgage Sec. Corp. of Am.*, 254 Mich. 492, 496 (1931).  The party contesting the sufficiency of the posting bears the burden of proof.  *White v. Burkhardt*, 338 Mich. 235, 239 (1953); *Cox. v. Townsend*, 90 Mich. App. 12, 15 (1979).

In this case, Judy challenges Wells Fargo's compliance with the posting requirement. She states the following in an affidavit:

> 11.    Shortly after hiring and [sic] attorney, I opened a probate matter so that we could talk to Wells Fargo and get to the bottom of the situation regarding my home.
>
> 12.    I then began to get letters from Trott and Trott, indicating that they were attorneys for Wells Fargo and if I did not pay the money that was owed they were told to start foreclosure on my home.
>
> 13.    I shared this information with my attorney and she indicated that she would talk to the law firm on my behalf.

14. My attorney said to me that I should watch my home closely, because even though she had been told by the attorney that she spoke with that they were not going to foreclose until they understood who owned the home, they might post a Notice on my home saying that they were going to foreclose and have a Sheriff Sale.

15. *No such Notice was ever posted on my home then nor has there been any notice placed on my home since then.*

16. I knew nothing about a foreclosure going forward and heard nothing about a Sheriff Sale of my home until my Attorney informed me that there had been a Sheriff Sale and my home was sold back to Wells Fargo and then sold to HUD for a dollar.

Ellison aff. ¶ 11-16 (emphasis added).

Paragraph 15 of Judy's affidavit, however, is directly contradicted by the verified complaint which states, in part:

22. Defendant, through its attorneys, Trott & Trott, P.C. posted notice on the Property of Defendant's intent to foreclose on the property that has been the home of Plaintiff for more than eighteen (18) years.

Compl. ¶ 22.

A non-moving party opposing summary judgment cannot create a genuine issue of material fact by submitting an affidavit which contradicts previous deposition testimony. *See Whitaker v. Wallace*, 170 F.3d 541, 543 n.1 (6th Cir. 1999). Contradictory affidavits must be disregarded on summary judgment, *id.*, for they do not create a *genuine* issue of material fact. *Bichele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984). The basis for this rule is that permitting a party who has been examined in a deposition to raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony would "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2nd Cir. 1969)). Though Judy's prior statement was made in a verified complaint and not a deposition, the Court finds no meaningful difference between a statement made in a

*verified* complaint and one made in a deposition. *Cf.* MCR 2.144(B)(2) ("[A] person who knowingly makes a false declaration [in a verified complaint] may be found in contempt of court."). Judy has offered no explanation for her recantation. *See* Wright, Miller & Kane, 10A Federal Practice and Procedure § 2726, at 452 (3d ed. 1998) ("If . . . an explanation is proffered, a credibility question is presented; without it, there are no facts suggesting why a credibility question exists and the non-moving party should not be allowed to manufacture a question of fact to delay resolution of the suit.").

Moreover, as stated above, Judy's "affidavit" is neither signed nor notarized, and thus is insufficient to discharge her burden on summary judgment. Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); *see also* 28 U.S.C. § 1746 (unsworn declarations may substitute for an affidavit if they are supported with a signature and the requisite statutory language).

Finally, paragraph 16 of Judy's affidavit – stating that she knew nothing of the sale until the home had already been sold – also does not impugn the validity of the foreclosure sale. That she received no actual notice of the foreclosure sale is irrelevant since actual notice is not required under the statute. *See Jennings*, 272 Mich. at 603.

Even though it is not yoked with the burden of proving the sufficiency of posting, *White*, 338 Mich. at 239, Wells Fargo has produced sufficient evidence that notice of the sale was posted on the premises in accordance with the statute. *See* Affidavit of Posting and Sheriff's Deed on Mortgage Sale (Def. mot. ex. J). The Affidavit of Posting states that

notice was posted by affixing it to the front door of the residence in a secure manner. *Id.*

Both documents are signed and sworn by the respective affiants, and are sufficient to

demonstrate compliance with the posting requirements of the statute.

Accordingly, Judy has failed to demonstrate the existence of a *genuine* issue of

material fact with respect to whether notice of the foreclosure sale was posted on the

premises in a conspicuous place.

      3. <u>Contractual Notice</u>

In a related argument regarding notice, Judy challenges Wells Fargo's compliance

with the notice requirements in the reverse mortgage document itself. The mortgage

document requires that if Wells Fargo invokes its authority to sell the residence at

foreclosure, it must provide notice of the upcoming sale to "Borrower." The borrower in this

instance is Judy, as personal representative of Abram's estate. "Notice" as defined in the

mortgage means delivery in person or by first class mail to the property address. Mortgage

¶ 16. Although Judy states in her affidavit that she received letters from Wells Fargo

attorneys (Trott & Trott, P.C.) stating that Wells Fargo would foreclose if Judy failed to pay

the outstanding loan balance, Ellison aff. ¶ 12, she also contends that she never received

notice of the foreclosure sale itself through first class mail, *id.* ¶ 16. Nor has Wells Fargo

produced a copy of the notice it was required under the mortgage to send to her.

Even assuming Wells Fargo never mailed Judy notice regarding the foreclosure sale,

the sale cannot be set aside. As discussed above, the requirements of the foreclosure

statute have been satisfied, and that is all that is required to prevent the Court from setting

aside the sale, even where contractual notice provisions are not met. *See, e.g.*, *Ross v.*

*Charter One Mortgage*, No. 251194, 2005 WL 957392, at *1 (Mich. Ct. App. Apr. 26, 2005)

(per curiam) (refusing to set aside a mortgage foreclosure sale based on a claim that the

mortgagee mistakenly failed to comply with *contractual* notice requirements); *Jackson v. Laker Group, L.L.C.*, No. 261588, 2005 WL 2901787, at *4 (Mich. Ct. App. Nov. 3, 2005) (following *Ross* and refusing to set aside foreclosure sale because contract did not include provision requiring notice prior to foreclosure sale); *Whitfield*, 2001 WL 1699782, at *1 (Mich. Ct. App. Dec. 28, 2001) (refusing to set aside foreclosure sale for the reason that lender did not provide actual notice of foreclosure sale despite promising to do so, where requirements of foreclose-by-advertisement statute were followed).

Moreover, it appears from Judy's statement in her verified complaint, which the Court credits, that she did in fact receive actual notice of the sale since she was aware of the posting on the property, Compl. ¶ 22, so any failure to comply with the contractual notice requirements would have been harmless.

For the above reasons, the Court concludes that Wells Fargo is entitled to summary judgment on Judy's request to quiet title in the subject property.

**ORDER**

**WHEREFORE** it is hereby **ORDERED** that Wells Fargo's motion for summary judgment (docket no. 11) is **GRANTED.**  Judgment will be entered in favor of Wells Fargo.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 12, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 12, 2010, by electronic and/or ordinary mail.

Alissa Greer
Case Manager